UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ELLIS HUBBARD III, *individually and on behalf of those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>GOLDSCHMITT & ASSOCIATES, LLC,<br><br>Defendant. | Case No. 1:25-cv-812<br><br>Judge Alston<br>Magistrate Judge Porter |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff Ellis Hubbard III ("Plaintiff" or "Hubbard") respectfully submits this response in opposition to Defendant Goldschmitt & Associates, LLC's Motion to Dismiss. D.E. 4, 5. Pursuant to Local Rule 7(J) and Fed. R. Civ. P. 78(b), Plaintiff submits that oral argument is unnecessary to resolve this Motion. D.E. 6.

Eager to avoid liability for its violations of federal law, Goldschmitt has filed a short Motion to Dismiss, alleging that because Plaintiff Hubbard worked remotely for Goldschmitt, he is categorically barred from seeking relief under the Worker and Adjustment Retraining ("WARN") Act. While Goldschmitt may certainly raise this issue and other defenses later, it is premature at this stage. The Motion should be denied.

**FACTUAL BACKGROUND**

On a motion under Rule 12(b)(6), "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). Thus, at this stage, the Court must assume

1

the facts in the Complaint are true. Goldschmitt operates a facility in Sterling, Virginia. D.E. 1 at ¶ 2. Plaintiff and the putative class of similarly situated individuals worked remotely from their homes in other locations. D.E. 1 at ¶¶ 3, 11. On or about April 24, 2025, Goldschmitt informed at least two hundred seventeen (217) of its employees, including Hubbard, that their jobs would be terminated on May 1, 2025. D.E. 1 at ¶¶ 15, 16. Consistent with this plan, Goldschmitt terminated Plaintiff's employment on May 1, 2025. D.E. 1 at ¶ 18. Goldschmitt did not provide 60 days' advance notice of these terminations to these employees. D.E. 1 at ¶ 14. The terminations constituted at least 50 employees and more than a third of the employees employed by the Sterling location. D.E. 1 at ¶¶ 4, 14, 19. Plaintiff filed this Complaint on May 9, 2025, D.E. 1, and on July 11, 2025, Goldschmitt filed the instant Motion to Dismiss, D.E. 4, 5.

## ARGUMENT

This is a putative class action following a large termination event at an employer in this district. In its Motion to Dismiss, the employer has asserted that it cannot be liable for any WARN Act claims for employees working remotely. This Court need not issue a far-reaching decision on whether the WARN Act categorically ignores remote employees (it does not). Instead, this Court should simply decide (as have other courts addressing this question) that discovery should proceed. The text of the WARN Act self-evidently covers remote employees in any event, and the employer can plead and prove its real defense (unforeseen business circumstances) later in this case.

### I. Inquiries Under the WARN Act Are Necessarily Fact-Intensive

This is a case under the WARN Act. *See* 29 U.S.C. § 2101. The WARN Act is a remedial statute designed to give workers time to adjust to loss of employment. *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1159 (9th Cir. 2001) ("While some provisions of the Act are punitive in nature, the primary purpose of the Act is

remedial."). Congress passed the Act in 1988 to secure employees against sudden and significant employment loss. *Hodge v. Synergy Inspections, LLC*, No. 5:24-CV-00177, 2025 WL 1690151, at *1 (S.D.W. Va. June 16, 2025) (noting history of Act). Employers have several defenses against WARN Act claims, including business circumstances which are not reasonably foreseeable. 29 U.S.C. § 2102(b)(2)(A); *Loc. Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) (noting that exceptions to employers are narrowly construed).

  Goldschmitt foreshadows raising its unforeseen business circumstances defense later in the first substantive sentence of its Motion. D.E. 5 at 1 (noting alleged reduction on certain government contracts). Because the WARN Act's exceptions function as affirmative defenses, the employer bears the burden of proof to assert that an exception applies. *See* 20 C.F.R. § 639.9; *Easom v. US Well Servs., LLC*, No. CV H-20-2995, 2023 WL 6279359, at *11 (S.D. Tex. Sept. 26, 2023) ("The WARN Act's exceptions are affirmative defenses. The employer has the burden to prove that an exception applied to the layoffs."). WARN Act defenses are fact-intensive and thus are not generally susceptible to asserting in a motion to dismiss. *In re Dewey & LeBoeuf LLP*, 487 B.R. 169, 175 (Bankr. S.D.N.Y. 2013); *In re Protected Vehicles, Inc.*, 392 B.R. 633, 636 (Bankr. D.S.C. 2008) ("Whether a particular defense is available, as well as the determination of whether proper notice was provided, is fact intensive[.]"); *see also Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 460 (M.D.N.C. 2016) ("Because the burden of establishing an affirmative defense rests on the defendant asserting it, a motion under Rule 12(b)(6) ... is generally not the appropriate vehicle to mount such a challenge.") (quoting *McQuade v. Xerox Corp.*, No. 5:10–CV–149–FL, 2011 WL 344091, at *3 (E.D.N.C. Feb. 1, 2011)). A motion to dismiss is simply not the proper procedural vehicle for Goldschmitt to invoke the unforeseen business circumstances defense (or other fact-intensive defenses) to liability.

A valid WARN Act claim has three elements: "(1) a mass layoff [or plant closing as defined by the statute] conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled notice." *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1281 (11th Cir. 2013) (quoting *Allen v. Sybase, Inc.,* 468 F.3d 642, 654 (10th Cir. 2006)). In general, "WARN Act claims are fact intensive as are the affirmative defenses[.]" *Philips v. Munchery Inc.*, No. 19-CV-00469-JSC, 2021 WL 326924, at *6 (N.D. Cal. Feb. 1, 2021); *see also In re Transcare Corp.*, 614 B.R. 187, 209 (Bankr. S.D.N.Y. 2020) ("The UBC defense is fact intensive and thus not conducive to resolution through dispositive motion practice."). The Act has also been the subject of significant litigation since the COVID-19 pandemic. *See, e.g.*, *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 246 (5th Cir. 2022) (COVID-19 not a natural disaster under the Act). Here, Goldschmitt appears to challenge that Plaintiff is eligible to seek relief under the Act in the first instance because he was not physically working in the Sterling location.

## II.     Remote Workers & The WARN Act

In its short Motion to Dismiss, Goldschmitt asserts the bold categorical argument that the WARN Act does not apply to remote workers. D.E. 5 at 9 ("As the only employee based in his home, no WARN notice was due to Plaintiff, or any other remote employee, because there were not 50 or more employees laid off from Plaintiff's or anyone else's home."). Practically, this self-serving argument would mean that vast swaths of the American economy are insulated from WARN Act liability when an employer decides to lay off a portion of its workforce. Not only have many courts rejected this proposition (as explained below), but taken to its logical extreme, Goldschmitt's argument would effectively render the WARN Act a dead letter. That is not and cannot be the law. Further, Goldschmitt's assertion finds no support in the very text of the Act itself.

4

First, Plaintiff is clearly an "affected employee" – he lost his job. 29 U.S.C. § 2101(a)(5) ("[T]he term 'affected employees' means employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer[.]"). Goldschmitt here focuses its argument on the definitions of "mass layoff" and "plan closing[,]" and avers that they do not include remote workers. Those definitions say:

> As used in this chapter--
> **(2)** the term "plant closing" means the permanent or temporary shutdown of *a single site of employment*, or one or more facilities or operating units within *a single site of employment*, if the shutdown results in an employment loss at t*he single site of employment* during any 30-day period for 50 or more employees excluding any part-time employees;
> **(3)** the term "mass layoff" means a reduction in force which--
> > **(A)** is not the result of a plant closing; and
> > **(B)** results in an employment loss at *the single site of employment* during any 30-day period for--
> > > **(i)(I)** at least 33 percent of the employees (excluding any part-time employees); and
> > > **(II)** at least 50 employees (excluding any part-time employees); or
> > > **(ii)** at least 500 employees (excluding any part-time employees)[.]

29 U.S.C. § 2101(a)(2, 3) (emphasis added). The term "single site of employment" is defined in the Code of Federal Regulations. 20 C.F.R. § 639.3(i). Plaintiff could meet any number of permutations of this definition, which is broad in scope.

Contrary to Goldschmitt's assertions, that definition explicitly includes remote workers in a vast array of definitions phrased in the disjunctive:

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

20 C.F.R. § 639.3(i)(6). Each clause of this definition could include a wide variety of employment situations. It would include Arthur Miller's Willy Loman under the clause covering "workers

5

whose primary duties require travel from point to point[.]" And it would likely include Plaintiff, whose "primary duties involve[d] work outside any of [his] employer's regular employment sites" where his work originated from the Sterling, Virginia location ("from which [his] work [was] assigned" or "to which [he] report[ed]"). Plaintiff could also qualify under the "outstationed" clause.[1] The regulation also contains a safety valve clause. 20 C.F.R. § 639.3(i)(8). That clause includes a warning that the application of the definition of "single site of employment" is not a license to evade liability: "The term 'single site of employment' may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. *The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable*." 20 C.F.R. § 639.3(i)(8) (emphasis added). That is precisely what Goldschmitt is doing here – attempting to evade the purpose of the Act rather than compensating its employees under the law. Remote employees may meet any number of the clauses in 20 C.F.R. § 639.3(i)(6, 8) just from a plain reading of the statute.

Courts have buttressed this textual reading: "[r]emote employees are 'undoubtedly' covered in the text of the regulation." *In re Party City Holdco Inc. Hanlon v. Party City Holdco,*

---

[1] Goldschmitt argues in a footnote that "outstation" connotes a situation where an employee lives or works somewhere for a short time. D.E. 5 at 6, n.3. But 20 C.F.R. § 639.3 itself, a section of definitions, does not explicitly define the term "outstation." But as the originating regulation explained, the word was intended to cover flexible work situations incapable of easy definition:
> These workers may not have an assigned home base, but *they must get their orders or assignments from somewhere*, even if that place changes from time to time. In order to cover this situation and the situation of outstationed workers and traveling workers who report to but do not work out of a particular office, that part of the regulation relating to mobile workers has been revised to clarify that *such workers should be treated as assigned to their home base or to the single site from which their work is assigned or to which they report*.

Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16042-01, 16051, 1989 WL 278605) (emphasis added). Indeed, Plaintiff here was not sitting in his home in Texas twiddling his thumbs. He got his orders and assignments from somewhere – Sterling, Virginia.

6

*Inc.*, No. 24-90621, 2025 WL 1888172, at *6 (Bankr. S.D. Tex. July 8, 2025) (quoting 20 C.F.R. § 639.3(i)(6) and pointing to *Hoover v. Drivetrain LLC*, 2022 WL 3581103, at *4 (Bankr. D. Del. Aug. 19, 2022)). As the Court in *Party City* explained mere weeks ago, remote employees who were terminated got fired because of a mass layoff at the corporate headquarters. *Id.* ("Defendants have not demonstrated why individual, fact specific inquiries are needed to determine whether the WARN Act applies to remote employees."); *see also Hoover v. Drivetrain LLC*, No. AP 20-50966, 2022 WL 3581103, at *4 (Bankr. D. Del. Aug. 19, 2022) ("While the focus of this regulation, which apparently dates back to 1989, appears to be more on 'mobile' employees – those who travel regularly rather than reporting to an office – than those who telecommute from home offices, the text of the regulation undoubtedly covers remote employees.").

Remote workers like Plaintiff could, depending on the exact facts, fall into any number of the situations outlined in 20 C.F.R. § 639.3(i)(6) or 20 C.F.R. § 639.3(i)(8). They could be "required to travel from point to point," be "outstationed," or perhaps most pertinently, their "primary duties involve work outside any of the employer's regular employment sites" and their work is "assigned" from one "single site." The regulation is wholly disjunctive. Goldschmitt is simply wrong on the point of law it asserts: that remote employees, no matter the facts, are not entitled to assert WARN Act claims. D.E. 5 at 9 ("Plaintiff pleads no facts showing he worked at a single site of employment where WARN Act notice obligations were triggered—he worked alone from home."). That is simply not a correct reading of 20 C.F.R. § 639.3(i)(6) or the caselaw applying it. This Court need not at this early stage of *this* case decide the broad question of whether every remote employee across the United States is categorically barred by the WARN Act from seeking relief. Not only is that proposition wrong on its face, but this Court does not have to decide whether it is right or wrong now.

The question of whether an employment location constitutes a "single site of employment" is a mixed question of law and fact not susceptible to a motion to dismiss. *Smith v. Zulily, LLC*, No. C24-1480-KKE, 2025 WL 1383670, at *3 (W.D. Wash. May 13, 2025) ("Defendants have not cited authority persuading the Court that its merits arguments should be resolved now, and have not cited binding authority indicating that Plaintiffs categorically cannot, as a matter of law, assert a claim for a WARN Act violation as remote workers when the allegations of the complaint are accepted as true.") (denying motion to dismiss). Assessing the caselaw in this arena, the Western District of Washington noted that the case was in the early stages: "The Court is aware of authority indicating that fact questions abound with respect to the availability of WARN Act protection." *Id.* (citing, among other cases, *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 934 (5th Cir. 1994) ("Whether multiple work locations constitute a 'single site of employment' under WARN is a mixed question of fact and law.")).

This cautious approach is consistent not only with decades of WARN Act caselaw holding that many issues are fact-intensive, but with the most basic and familiar standards of Rule 12 motions. *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 767 (D. Md. 2008) ("The issue in reviewing the sufficiency of the pleadings in a complaint is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims."). This is the approach that most courts have taken in the context of the WARN Act and remote workers at the beginning stages of cases. *See, e.g.*, *Rodriguez v. Kaseya Holdings, Inc.*, No. 1-24-CV-752-DAE, 2025 WL 1356397, at *4–5 (W.D. Tex. Mar. 31, 2025), *report and recommendation adopted*, 2025 WL 1154528 (W.D. Tex. Apr. 21, 2025) ("The undersigned finds these allegations sufficiently pleaded to state a claim under the WARN Act and that any factual disputes are better left for later stages of the litigation.") (remote worker who reported to Miami headquarters); *Belendez-Desha*

*v. JAF Commc'ns, Inc.*, No. 24-CV-00741 (MMG), 2024 WL 5155748, at *3–4 (S.D.N.Y. Dec. 18, 2024) (declining to resolve question of remote workers at class certification stage); *Murphy v. LenderLive Network, Inc.*, No. 13-CV-03135-RBJ, 2014 WL 5396165, at *2–3 (D. Colo. Oct. 22, 2014) ("The plaintiffs seek information about the remote employees, such as how their work was assigned and by whom, and to which offices their supervisors reported. That is what discovery is for."). Precisely so.

Taken to its logical conclusion, Goldschmitt's position would mean that much of America's labor market would surrender protections under the WARN Act by working remotely. Plaintiff should not be punished for simply participating in an economy that has evolved at a breakneck pace to take hits on the chin like the COVID-19 pandemic.[2]

All the cases cited by Goldschmitt are inapposite or support Plaintiff's arguments.

- *Meson* is not apposite. Decided decades before remote work was common, that case concerned a manager who managed an entire office of other employees. *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 810 (4th Cir. 2007) ("Meson was not a 'mobile worker': she 'work[ed] out of a particular office' in Falls Church, Virginia and also managed the two other employees in that office."). So Meson was not remote at all. Her job was "similar

---

[2] The Department of Labor issued the operative version of 20 C.F.R. § 639.3 in 1989, decades before remote work became as ubiquitous as it is today. *See* 54 Fed. Reg. 16042 (1989). Other, more recent regulations promulgated by the Department explicitly encompass remote work. 29 C.F.R. § 825.111(a)(2) ("An employee's personal residence is not a worksite in the case of employees, such as salespersons, who travel a sales territory and who generally leave to work and return from work to their personal residence, or employees who work at home, as under the concept of flexiplace or telecommuting. Rather, their worksite is the office to which they report and from which assignments are made.") (FMLA context, last revised in 2023). Imagine if an employee's capability to take FMLA leave were determined by whether they worked remotely. The WARN Act is not frozen in 1989, as evidenced by the broad definitions in 20 C.F.R. § 639.3(i)(6, 8).

to that of most other branch managers[.]" *Id.* In other words, she was anchored to a particular office *of the company*. *Meson* does not do the work Goldschmitt wants.

- *Karroll* did not involve remote workers, but employees required to service various regional physical kiosks. *Karroll v. Car Toys, Inc.*, 765 F. Supp. 3d 506, 511 (D.S.C. 2025) ("Plaintiff was frequently required to rotate to different kiosks in the geographical region referred to as Region NEF to cover shifts."). Plaintiff's "required movement was temporary and just as a fill-in for absences caused by other employees." *Id.* at 522.

- *Storehouse* concerned an employee who worked out of a different office space of the same company. *In re Storehouse, Inc.*, No. 06-11144-SSM, 2010 WL 4453849, at *1 (Bankr. E.D. Va. Nov. 3, 2010) ("He opted not to work from home because he felt he was more efficient when working in a professional environment. Instead, he was provided with office space in the back of a small Storehouse retail location in the Stony Point Fashion Park in Richmond, Virginia."). *Storehouse* does not bear here.

- Goldschmitt relies on *Piron v. Gen. Dynamics Info. Tech., Inc.*, 2020 WL 1159383 (E.D. Va. Mar. 10, 2020), to support its claim that remote workers are not protected under the WARN Act if they work from home and report to a central office. But Defendant buries the real story in a lengthy footnote. The far more relevant and recent decision from the same court (in fact, in the same case) is *Piron v. Gen. Dynamics Info. Tech., Inc.*, 2022 WL 363958 (E.D. Va. 2022). There, the court certified a WARN class that included remote workers based on allegations showing they could qualify as "mobile workers" under WARN regulations. 2022 WL 363958, at *13. Ultimately, the court decided to kick the decision about "single site of employment" to summary judgment or trial. Many of the remote employees, including roughly 300 Case Reviewers, worked entirely from home and

were not mobile. These employees were assigned cases by and submitted work to the defendant's central PMO (headquarters) office. *Piron*, 2022 WL 363958, at *4–5. Despite the absence of travel or mobile assignments, the court found WARN Act protections applicable. Thus, *Piron* directly supports the proposition that remote workers, even those who do not travel, may still be deemed to work at a single site of employment and are not categorically excluded from WARN Act coverage.

The proposition asserted by Goldschmitt is somewhat circular, cruel, and ultimately self-serving. D.E. 5 at 9 ("As the only employee based in his home, no WARN notice was due to Plaintiff, or any other remote employee, because there were not 50 or more employees laid off from Plaintiff's or anyone else's home."). The details of Plaintiff's work arrangement will be better understood once discovery is underway, but in general, remote workers "must get their orders or assignments from somewhere[.]" 54 Fed. Reg. 16042-01, 16051, 1989 WL 278605. There is no basis for Goldschmitt's assertion.

## CONCLUSION

Ultimately, the question presented on this Motion is simple. Goldschmitt would have this Court articulate a broad rule that an employee working remotely can *never* bring a WARN Act claim. This goes too far. Decades of case law have shown that WARN Act cases are heavily fact-intensive. And Goldschmitt may well have a cognizable unforeseen change in business defense that it may plead and prove. But at this stage of the case, the Court need not decide whether Plaintiff fits perfectly into one clause or another of 20 C.F.R. § 639.3(i)(6) or 20 C.F.R. § 639.3(i)(8). That is what discovery is for. Goldschmitt is simply trying to jump the shark and do what the WARN Act caselaw explicitly suggests is not appropriate: resolve a complex mixed question of fact and

law at the pleadings stage. The Court should decline this invitation and move this case to the next stage.

Dated: August 8, 2025                    Respectfully submitted,

/s/ *Devon J. Munro*

Devon J. Munro (VSB # 47833)
**MUNRO BYRD, P.C.**
4235-A Colonial Ave.
Roanoke, VA 24018
T: 540-283-9343
F: 540-283-5162
dmunro@trialsva.com

J. Gerard Stranch, IV (TN BPR #23045)
Michael C. Tackeff (TN BPR # 036953)
**STRANCH, JENNINGS, & GARVEY, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
T: 615/254-8801
F: 615/255-5419
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI, LLP**
613 Williamson St., Suite 201
Madison, WI 53703
T: (608) 237-1775
F: (608) 509-4423
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Ian Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481

12

        ltoops@cohenmalad.com
        ibensberg@cohenmalad.com

*\* Pro Hac Vice* applications to be submitted

*Counsel for Plaintiff and the Proposed Class*

### Certificate of Service

I, Devon Munro, certify that I filed a copy of the foregoing opposition to the motion to dismiss with the Court's ECF system, thereby serving all counsel registered in this case with a copy.

        */s/ Devon J. Munro*